IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-03247-PAB-CYC

JOSEPH ARCHULETA,

    Plaintiff,

v.

MOSES STANCIL,
AMANDA RETTING,
JUSTIN ENSINGER,
XAVIERA TURNER,

    Defendants.

**MOTION TO DISMISS FIRST AMENDED COMPLAINT (ECF NO. 13)**

Defendants Moses Stancil, Amanda Retting, Justin Ensinger, and Xaviera Turner, through the Colorado Attorney General, respectfully submit the following Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 13). In support thereof, the Defendants state as follows:

**CERTIFICATE OF CONFERRAL**

Archuleta is a *pro se* prisoner, so the Defendants are not required to confer with him regarding this motion under D.C.COLO.LCivR 7.1(b)(1).

**STATEMENT OF THE CASE**

Plaintiff Joseph Archuleta is an inmate in the custody of the Colorado Department of Corrections (CDOC) who is currently housed at the Colorado Territorial Correctional Facility. (ECF No. 13 at ¶ 2). He is serving a sentence pursuant to two convictions in Denver County, 17CR3885, for sexually assaulting a physically helpless victim incapable of appraising the nature

1

of her conduct. § 18-3-402(1)(b), (h), C.R.S.[1] (*Id.* at ¶ 3). He was sentenced pursuant to the Colorado Sex Offender Lifetime Supervision Act of 1998 (SOLSA) and is serving an indeterminate sentence of eight years to life. *See* § 18-1.3-1001, C.R.S., *et seq*. (*Id.* at ¶ 4).

Inmates convicted under SOLSA serve indeterminate life sentences unless and until they are paroled. §§ 18-1.3-1004(1)-(2), 1006(1)(a), C.R.S. To be considered for parole under SOLSA, an inmate must progress in the Sex Offender Treatment and Monitoring Program (SOTMP) administered by CDOC. *See* § 18-1.3-1006. (*Id.* at ¶ 6). CDOC promulgated Administrative Regulation (AR) 700-19 to comply with its statutory obligations under SOLSA.[2] (*Id.* at ¶ 11). Pursuant to AR 700-19(IV)(C)(10), inmates who have a "sexual behavior criminal case awaiting judicial determination" are designated "F" or "Future" qualifiers for treatment, meaning they will be eligible for treatment when their convictions are no longer on appeal, and they can confess to their crimes without consequence. Archuleta alleges that he is currently appealing the denial of a petition for postconviction relief at the Colorado Court of Appeals; thus, Defendants will not permit him to receive treatment. *See* Crim. P. 35(c). (*Id.* at ¶¶ 9-12).

In his First Amended Complaint (the Complaint) he brings several claims challenging the constitutionality of CDOC's requirement that he await treatment until his postconviction appeal is resolved. (*Id.* at 13, *Statement of Claims*). Claims 1 and 2 raise Fourteenth Amendment procedural and substantive due process challenges, respectively. (*Id.* at ¶¶ 170-183). In Claim 3,

---

[1] This Court can take judicial notice of Archuleta's criminal case for purposes of this Motion to Dismiss. *See Stan Lee Media, Inc. v. Walt Disney Co.,* 774 F.3d 1292, 1298 n.2 (10th Cir. 2014).

[2] The most current version of A.R. 700-19 can be found on CDOC's website: https://drive.google.com/file/d/1pbnJmLLLr0Dc3fnv25o_eJrlcKDXPRcV/view

Archuleta contends he has been denied treatment in violation of the Eighth Amendment. (*Id.* at ¶¶ 184-201). Claim 4 rests on the assertion that CDOC's confession requirement violates his Fifth Amendment right to refrain from self-incrimination. (*Id.* at ¶¶ 202-213). Claim 5 is a First Amendment retaliation claim. (*Id.* at ¶¶ 214-231).

Archuleta sues Defendants in their official and individual capacities. (*Id.* at 2-3, *Defendant(s) Information*). He seeks (1) a declaration that they violated the Constitution in the manner alleged; (2) an injunction ordering them to admit him to the SOTMP; (3) an injunction permitting him to receive treatment via telehealth, if necessary; (4) an injunction requiring Defendants to maintain a "transparent and reliable" waiting list for the SOTMP; and (5) monetary damages. (*Id.* at 31- 32, *Request for Relief*).[3]

## SUMMARY OF THE ARGUMENT

Archuleta has not stated any constitutional claims because he has not pleaded facts or relied on law that plausibly entitles him to relief.

His due process claims fail for many reasons, but the primary reason is that the Due Process Clause does not prohibit CDOC from requiring him to confess to his crimes before receiving treatment. This confession requirement has been examined by the Tenth Circuit and

---

[3] Archuleta can only recover injunctive relief from Defendants in their official capacities, and he can only recover monetary damages from Defendants in their individual capacities. *See Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) (citing *Hafer v. Malo*, 502 U.S. 21, 30 (1991)). To facilitate efficient review of this motion, Defendants will assume the Complaint seeks injunctive relief against them in their official capacities and monetary relief from them in their individual capacities. To the extent that is not a correct assumption, Defendants reserve the right to seek to dismiss or otherwise dispose of any individual capacity claims for injunctive relief and/or any official capacity claims for money damages.

this Court; both Courts have concluded that the requirement does not violate inmates' constitutional due process rights because "admission of responsibility is considered a legitimate part of the rehabilitative process." *Searcy v. Simmons*, 299 F.3d 1220, 1228 (10th Cir. 2002).

Archuleta's Fifth Amendment claim fails on similar grounds. The Tenth Circuit has concluded that the confession requirement is constitutional under the Fifth Amendment because it has a legitimate penological purpose. *Doe v. Heil*, 533 F. App'x 831, 841 (10th Cir. 2013).

Archuleta's First Amendment claim is insufficient because he has not alleged any facts that might support his claim that Defendants acted with retaliatory animus.

His Eighth Amendment claim is also inadequate because he has not pleaded any facts that might demonstrate he suffered objective harm as a result of Defendants' deliberate indifference.

For all of these reasons, this Court should dismiss the Complaint in its entirety.

## STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal, a complaint must contain factual allegations that – when taken as true – establish a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility requires more than mere conceivability. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). When resolving a Rule 12(b)(6) dismissal motion, a court should construe the allegations in the light most favorable to the plaintiff. *See Sec. & Exch.*

4

*Comm'n v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014). However, pure legal conclusions are not afforded such deference. *See Dahn v. Amedei*, 867 F.3d 1178, 1185 (10th Cir. 2017).

## ARGUMENT

### I. The *Turner* test applies to all of Archuleta's claims.

Notwithstanding their confinement in a penal institution, prisoners retain their constitutional rights, and federal courts have a duty to protect those rights. *Turner v. Safely*, 482 U.S. 78, 85 (1987). Even so, running a prison is an "inordinately difficult undertaking" so courts must treat prison regulations and administrators with deference. *Id.* Thus, "when a prison regulation impinges on an inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89.

Because there is a rational connection between CDOC's confession requirement, its appeal requirement, and its rehabilitative goals, Archuleta's claims are legally insufficient, as explained more fully below.

### II. Archuleta has not stated claims under the Fourteenth Amendment.

#### A. Claims 1 and 2 should be analyzed under a specific constitutional amendment, rather than generalized notions of due process.

As an initial matter, Archuleta's due process claims are deficient because they are really Fifth Amendment claims clothed in Fourteenth Amendment garb. Specifically, Archuleta asserts that, as a matter of due process, CDOC must seek a variance from the Guidelines and offer him sex offender treatment even though he has not and will not confess to committing sex crimes, a necessary step in his rehabilitation. (ECF. No. 13 at ¶¶ 173, 179). In other words, he seeks to avoid compelled confession. A claim that a person should not be compelled to confess to his crimes falls squarely within the Constitution's Fifth Amendment protections. U.S. Const. amend

5

V (stating that no person shall be compelled in a criminal case to "to be a witness against himself."). Where, as here, a claim is governed by a specific constitutional provision, courts apply that specific provision, and alternative analysis under substantive due process is inappropriate. *See County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998); *Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide . . . .) (internal quotation marks and citation omitted). For that reason alone, Archuleta's due process claims fail.

**B. Even if this Court considers the due process claims, the SOMB guidelines do not create a liberty interest because they are not binding on CDOC.**

Even if Archuleta's due process claims are considered, his reliance on the Sex Offender Management Board (SOMB) Guidelines is misplaced. In this regard, Archuleta asserts that Defendants violated his procedural due process rights by "depriving him of the opportunity to participate in SOTMP" "without input from the SOMB Guidelines." (ECF No. 13 at ¶ 173). He also asserts that Defendants violated his substantive due process rights by delaying access to treatment pursuant to AR 700-19 (IV)(C)(10), which allegedly conflicts with the Guidelines. (*Id.* at ¶ 180).

To make a due process claim under the Fourteenth Amendment, a plaintiff must assert that the State infringed on a protected liberty interest. *Fristoe v. Thompson*, 144 F.3d 627, 630 (10th Cir. 1988). A protected liberty interest can arise either from the Due Process Clause of the United States Constitution or from a state or federal law. *Id.* Here, Archuleta relies on the

6

Guidelines and SOLSA's statutory framework to support his claims, so he appears to assert that he has parole-related interest in treatment that arises from state law. [4] (ECF No. 13 at 9-10).

"A state parole statute can create a liberty interest when the statute's language and structure sufficiently limits the discretion of a parole board." *Boutwell v. Keating*, 399 F.3d 1203, 1213 (10th Cir. 2005). A parole board's discretion is generally "sufficiently limited" when the mandatory language of the applicable statute requires the board to release inmates in certain circumstances. *Id.* Colorado inmates have no liberty interest in consideration for release to discretionary parole. *Bertolo v. Lind*, 825 F. App'x 581, 584 (10th Cir. 2020) (declining to consider the plaintiff's claim that the Board improperly declined to release him because the plaintiff had "no liberty interest in discretionary parole before his sentence expires").

Here, however, Archuleta posits that the Guidelines create a liberty interest in accessing the SOTMP so that he can be meaningfully eligible for release to parole. The Guidelines expressly state, "[T]he SOMB does not have purview over other entities involved in the supervision of defendants convicted of a sexual offense (for example, probation, parole, and the judiciary), [but] it offers these guidelines as a tool to assist in the management of offenders[,] to enhance collaboration among stakeholders[,] and to provide guidance on best practices." *See Standards and Guidelines for the Assessment, Evaluation, Treatment, and Behavioral Monitoring of Adult Sex Offenders*, p. 4.[5] Thus, the Guidelines are not legally binding on other

---

[4] Even if his claims are construed more broadly, the Due Process Clause alone does not confer a liberty interest in freedom from state action that is authorized by the sentence imposed — for example, incarcerating an inmate for the full duration of his custodial sentence. *See Sandin v. Conner*, 515 U.S. 472, 480 (1995).

[5] Because Archuleta refers to the Guidelines, and they are central to the claims made in the Complaint, they may be considered under a Rule 12(b)(6) motion. "When a document is

criminal justice agencies, including CDOC, and do not create a parole-related constitutional entitlement for sex offenders. *See Bertolo v. Shain*, No. 17-cv-00773-RM-KLM, 2020 WL 2365245, at *5 (D. Colo. Feb. 27, 2020) (holding, in part, that SOMB does not have enforcement authority over the SOTMP), *report and recommend. adopted*, 2020 WL 1502295.

And even if the SOMB had legal authority to enforce its Guidelines, the Guidelines allow CDOC broad discretion to delay treatment until sex offenders can confess to their crimes. They provide that, once treatment providers have verified that an appeal was filed, providers *may* modify the Guidelines to allow for limited treatment that does not require confession, but "[sex offenders still] cannot fully progress and be discharged successfully until they have met all the required components" set forth in section 3.160. *See* Guidelines, p. 54. Section 3.160 states that "a treatment provider may opt to discharge a client from treatment or not accept a client into treatment if the provider determines a factor(s) exists that compromises the therapeutic process." *Id.* at 50. Therefore, if providers determine that waiving the confession requirement would compromise the therapeutic process, they are not required to provide treatment. AR 700-19(IV)(C)(10) evinces CDOC's clinical determination that waiving the confession requirement

---

referred to in the complaint and is central to the plaintiff's claim, the court has discretion to consider the document as part of the pleadings." *U.S. Olympic Comm. v. Amer. Media, Inc.*, 156 F. Supp. 2d 1200, 1204 (D. Colo. 2001) (citing *Prager v. LaFaver*, 180 F.3d 1185, 1188-89 (10th Cir. 1999)). The Guidelines may be found online at
https://efaidnbmnnnibpcajpcglclefindmkaj/https://dcj.colorado.gov/sites/dcj/files/documents/branded_adult_standards_november_2023.pdf.

would compromise the SOTMP, so they are not required to provide treatment in absence of a confession. In sum, the Guidelines do not create an entitlement to access the SOTMP.

### C. Even if this Court considers the due process claims, Archuleta does not allege that he was denied constitutionally mandated procedures, nor does he describe any conduct that would shock the judicial conscience.

Should this Court choose to consider Archuleta's due process claims as they apply to SOLSA's statutory framework, Archuleta's claims still fail. Assuming for the sake of argument that Archuleta has a liberty interest in accessing the SOTMP, he must still set forth allegations that plausibly support the conclusion that (1) he was denied constitutionally adequate process; or (2) due to defendants' deliberate indifference, he was deprived of a liberty interest "in a manner shocking to the judicial conscience." *Allen v. Clements*, 930 F. Supp. 2d 1252, 1264 (D. Colo. 2013). "[T]o satisfy the 'shock the conscience' standard" there must be "a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Doe*, 553 F. App'x at 841, 843 (citation omitted).

#### 1. Archuleta does not explain what additional process is due.

When evaluating procedural due process claims, courts generally consider three factors. *Allen*, 930 F. Supp. 2d at 1269 (citations omitted). First, they consider the private interest affected by official action. *Id.* Second, they consider "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Id.* (quoting *McMillan v. Wiley*, 813 F. Supp.2d 1238, 1249 (D. Colo. 2011)). Third, they consider the benefits and burdens of mandating that the state follows different procedures. *Id.* To permit courts to evaluate the second factor, a plaintiff must describe

9

how the procedures employed were deficient or explain how the defendants failed to follow proper procedures. *Id.* If the plaintiff does not do so, he has not stated a claim for relief. *Id.*

In this case, Archuleta has not explained how the procedures employed were deficient. He admits that he sent a kite asking for admission to the SOTMP and received a written response notifying him that treatment was denied. (ECF No. 13 at ¶ 81). He also alleges that he grieved the denial of treatment and received written responses that cited to the portions of AR 700-19 prohibiting his entry into treatment. (ECF No. 13 at ¶¶ 74, 76-77, 82-85). He alleges that he was afforded another opportunity to be heard when he met with Defendant Turner and made the argument that his appeal should not prevent his entry into treatment. (*Id.* at ¶ 78). He concedes that Defendant Turner explained that, notwithstanding its discretion to seek a variance pursuant to the Guidelines, it is CDOC policy to delay treatment until appeals are concluded. (*Id.* at ¶ 79). Archuleta also wrote a post-grievance letter and received a written response explaining why he could not yet receive treatment. (*Id.* at ¶ 87).

In sum, Archuleta admits that his complaints went through multiple layers of review, and he was afforded the right to be heard. Given those admissions, he does not explain what additional procedures were due, nor does he specify in what manner CDOC's review processes fell short of constitutional standards. Thus, he has provided no basis for this Court to conclude that Defendants violated his procedural due process rights.

### 2. Archuleta does not set forth allegations that might support his claim that Defendants' conduct would shock the judicial conscience.

To support his substantive due process claim, Archuleta alleges that Defendants delayed his entry into the SOTMP because, as a matter of policy, they will not provide treatment until his criminal appeals are resolved. (ECF No. 13 at ¶ 179). In *Doe*, the Tenth Circuit concluded that

inmates do not have a liberty interest in access to the SOTMP when they are not receiving treatment because they have refused to comply with program requirements — including the requirement that they take responsibility for their crimes. 533 F. App'x at 842 (concluding that the Fourteenth Amendment did not prohibit CDOC from requiring Doe to submit to a polygraph and provide a full sexual history). The *Doe* court further concluded that, even if Doe did have a liberty interest, "a factual showing that a defendant prison administrator imposed reasonable, generally applicable conditions on the admission of inmates into a therapeutic program is very unlikely to . . . rise to the level of conscience-shocking deliberate indifference." *Id.* at 845. The Court also held that the confession requirement is justified by a legitimate state interest in rehabilitating offenders, and it is therefore not "conscience shocking." *Id.* at 840. Accordingly, Archuleta has not stated a substantive due process claim.

**III.     Archuleta has not stated a Fifth Amendment claim.**

Archuleta's Fifth Amendment claim similarly falls short. He claims the SOTMP's requirement that he confess, and the associated chilling effect on his right to appeal, violates the Fifth Amendment. (ECF No. 13 at ¶¶ 202-213).

In *Allen v. Hickenlooper*, 2014 WL 4400765, at *3, another court in the District of Colorado considered the precise issue that Archuleta raises. Allen, a sex offender, sued parole board members seeking to enjoin them from enforcing a confession requirement pursuant to the Fifth Amendment. He alleged that his petition for certiorari review was pending before the Colorado Supreme Court and argued that if the Court overturned his conviction, any confession he made in SOTMP could be used to incriminate him at a new criminal trial. *Id.* at *2. The *Allen* court analyzed whether the confession requirement, and the associated appeal requirement, were

11

constitutional under the Fifth Amendment. In doing so, it assumed *arguendo*, that the challenged policy infringed on Allen's Fifth Amendment rights; but it noted that he could not prevail unless he also alleged facts showing the requirement was not rationally related to a legitimate penological interest. *Id.* (citing *Turner*, 482 U.S. at 89). Relying on *Doe*, 533 F. App'x 839-40, the court recognized that CDOC has a legitimate interest in rehabilitating sex offenders. *Allen*, 2014 WL 4400765, at *2. It also concluded that CDOC's interest in rehabilitation is served by requiring sex offenders, "without regard to their Fifth Amendment stake in avoiding self-incrimination, to submit to a polygraph and admit their full sexual history." The Supreme Court has similarly opined that "[a]n important component of [sex offender] rehabilitation programs requires participants to . . . accept responsibility for their misconduct." *McKune v. Lile*, 536 U.S. 24, 33 (2002).

In sum, this Court should follow *Doe* and *McKune* and conclude that any infringement on Archuleta's Fifth Amendment rights and his related appellate rights is constitutional.[6]

**IV.    Archuleta has not stated a claim under the First Amendment.**

Archuleta's First Amendment claim also fails under Rule 12(b)(6). His contention appears to be that filing a claim for postconviction relief is protected speech, and AR 700-19(IV)(c)(10)'s prohibition on sex offender treatment during the pendency of an appeal is

---

[6] Inmates have a statutory right to appeal their convictions. *See United States v. Eggert*, 624 F.2d 973, 974 (10th Cir. 1980). That right, however, is more conditional and thus weaker than the constitutional right to refrain from self-incrimination. To invoke it in a state proceeding, an appellant must fulfill the precise terms of a state statute permitting appeal, and he can be statutorily disqualified if he does not. *Id.* If an inmate's constitutional right to refrain from self-incrimination does not trump CDOC's legitimate rehabilitative goals under the *Turner* test, the conditional right to appeal certainly cannot take priority over them.

retaliation for exercising his speech rights, an alleged violation of the First Amendment. (ECF No. 13 at ¶¶ 215-231). But to the extent that Archuleta's right to appeal is protected by the First Amendment, CDOC's confession requirements are not retaliatory; they have been repeatedly deemed a constitutionally legitimate component of CDOC's sex offender treatment protocols. *Doe v, Heil*, 781 F. Supp. 2d 1134, 1140 (D. Colo. 2011); *Bertolo*, 2020 WL 2365245 at  (D. Colo. Feb. 27, 2020). Thus, Archuleta's retaliation claim is not supported by existing law.

**V.      Archuleta has not stated a claim under the Eighth Amendment.**

Archuleta's Eighth Amendment claim fares no better. To support this claim, he alleges that Defendants have concluded he needs access to the SOTMP, but they are arbitrarily and callously disregarding his mental health needs due to deliberate indifference. (ECF No. 13 at ¶ 189). As a result, Archuleta alleges that has suffered mental health challenges as well as migraine headaches, upset stomach, loss of appetite followed by binges, and weight gain, all of which have led to pain, prediabetes, and neuropathy diagnoses. (*Id.* at ¶¶ 198-201).

To state a plausible Eighth Amendment claim, a plaintiff must allege facts that might demonstrate he was subjected to objectively severe harm, and Defendants were "subjectively aware of 'a substantial risk of serious harm to an inmates' and yet voluntarily acted, or failed to act, despite that awareness." *Allen*, 930 F. Supp. 2d at 1262 (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).

This Court previously held that the allegation that CDOC staff have arbitrarily denied sex offenders access to SOTMP, causing emotional distress and triggering secondary physical disease, is too vague to demonstrate that staff caused objectively serious injury. *Id.* at 1263. And to the extent that a plaintiff may allege that long-term uncertainty concerning the date he will be

13

paroled has caused psychological harm, such anxiety is simply not serious enough to trigger an Eighth Amendment violation. *Id.* at 1263-64. In other words, anxiety and weight gain are not the type of threats to physical or mental well-being that the Eighth Amendment prohibits. *Id.* (citing *Battle v. Anderson*, 564 F.2d 388, 403 (10th Cir. 1977)); *see also Diaz v. Lampela*, 601 F. App'x 670, 675 (10th Cir. 2015) (noting the Court has rejected the argument that when a psychological condition could impact parole, the Eighth Amendment mandates treatment, even if the condition does not otherwise constitute a serious medical need).

      Further, dismissal is proper under the subjective prong of the analysis as well. The Complaint indicates that Archuleta's own choices have prevented him from accessing the SOTMP because, rather than get treatment, he has elected to file a postconviction appeal and protest his innocence. (ECF No. 13 at ¶¶ 6-12). He has a statutory right to appeal under Crim. P 35(c), *and* a potential liberty interest in accessing SOTMP, but the fact that he may have a right of constitutional dimension does not lead to the conclusion Defendants violated the Eighth Amendment by compelling him to choose between owning his crimes and being rehabilitated on one hand and appealing his conviction on the other hand. *McKune*, 536 U.S. at 41 (stating that the "criminal process . . . is replete with situations requiring the making of difficult judgments as to which course to follow. Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose."). As the Supreme Court has noted, "acceptance of responsibility is the beginning of rehabilitation." *Id.* at 47. Defendants have determined that rehabilitation is unacceptably impaired when an inmate cannot confess because he has chosen to appeal his conviction. This determination does not demonstrate that Defendants were

deliberately indifferent to Archuleta's mental health needs, but the exact opposite. The Supreme Court defines deliberate indifference as disregarding a risk of harm of which a person is aware. *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003). Here, Defendants have determined that to ensure they meet Archuleta's mental health needs, they must wait to treat him until he can take responsibility for his crimes and he can truly be rehabilitated.

## CONCLUSION

For reasons articulated in this Motion to Dismiss, Defendants respectfully request that all claims against them be dismissed in their entirety.

Respectfully submitted this 26th day of February, 2025.

        PHILIP J. WEISER
        Attorney General

        *s/ Amy E. Adams*
        AMY E. ADAMS
        EVAN BRENNAN
        Assistant Attorneys General
        Civil Litigation & Employment Law Section
        1300 Broadway, 10th Floor
        Denver, CO  80203
        Telephone: (720) 508-6000
        Fax: (720) 508-6032
        Email:  Amy.Adams@coag.gov
                Evan.Brennan@coag.gov

## CERTIFICATE OF SERVICE

This is to certify that I have served **MOTION TO DISMISS FIRST AMENDED COMPLAINT** upon all parties herein by e-filing with the CM/ECF system maintained by the court on February 26, 2025, and by depositing same in the United States mail, postage prepaid, at Denver, Colorado, on February 27, 2025, addressed as follows:

Joseph Archuleta, #182427
CTCF
PO BOX 1010
Canon City, CO. 81215-1010

**Courtesy copy via email:**
Tony DeCesaro, CDOC

*s/ Jennifer Kaercher*

16